**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**NATASHA WALKER JONES**                                                    **PLAINTIFF**

**v.**                                  **Case No. 4:23-cv-392-JM**

**ARKANSAS DEPARTMENT OF HEALTH**                                **DEFENDANT**

## ORDER

Plaintiff Natasha Walker Jones brought this *pro se* employment discrimination suit against her former employer, the Arkansas Department of Health (ADH), alleging she that she was subjected to workplace discrimination, harassment, and retaliatory termination because of her disability (lupus), race (African American), religion (7th Day Adventist), and national origin (American). (Doc. 2). At the Court's direction (Doc. 4), Jones filed an amended complaint addressing pleading deficiencies. (Doc. 5). The Court screened her amended complaint, narrowed her claims, and served only Jones's race-related discrimination and retaliation claims. (Doc. 6). Before the Court is Defendant's motion for summary judgment. (Doc. 20). Jones has responded.[1] (Doc. 25 & 27). For the reasons stated below, Defendant's motion for summary judgment (Doc. 20) is GRANTED.[2]

### I.        Standard of Review

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878

---

[1] Jones has filed two pleadings titled "Plaintiff's Motion Against Summary Judgement" (Doc. 25 & 27), which the Court treats collectively as Jones's response to Defendant's Motion for Summary Judgment.

[2] On February 12, 2025, the Court canceled a jury trial set to begin March 10, 2025 but made no other findings at that time. (Doc. 30). Believing the Court had issued a ruling on the pending motion for summary judgment, Jones filed a notice of appeal with the Eighth Circuit Court of Appeals. (Doc. 31). The Eighth Circuit has since dismissed that appeal for lack of jurisdiction. (Doc. 34). Should she desire to do so, Jones is free to file a notice of appeal from this dispositive order dismissing her claims.

(8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial on disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Additionally, the Local Rules of the Eastern District of Arkansas require the party moving for summary judgment to file (along with its motion and brief) a "separate, short and concise statement of the material facts" stating that there are no disputed facts. LOCAL RULE 56.1(a). These

facts are deemed admitted when not contested by a separately filed statement of fact. LOCAL RULE 56.1(b)-(c); FED. R. CIV. P. 56(e)(2). In the final scheduling order issued to the parties, the Court directed the following:

> **FORMAT OF SUMMARY JUDGMENT STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1** - In opposing a motion for summary judgment, the non-moving party shall format her statement of disputed (and undisputed) material facts pursuant to Local Rule 56.1 as follows. The non-moving/opposing party shall first respond **paragraph by paragraph** to the statement of undisputed material facts submitted by the moving party. The non-moving opposing party **shall** format the responsive portion of her statement like Requests for Admission. That is, **she should repeat the statement verbatim** as set forth in the moving party's statement and respond to it by admitting the statement or pointing out that portion of the statement, if any, she disputes. By way of example the first paragraph of a non-moving/opposing party Local Rule 56.1 statement might read as follows:
>
> **Moving Party: 1. "Plaintiff began working for Defendant Employer in March of 2000." Response:** 1. Plaintiff, as the non-moving party, will either admit or deny this allegation. If denied, Plaintiff will state with particularity that portion of the allegation denied, citing to any evidentiary support for the denial. After responding paragraph by paragraph to the moving party's statement of undisputed material facts in this fashion, the non-moving/opposing party may identify additional material facts as to which it contends a genuine issue exists for trial

(Doc. 16 at 1–2) (emphasis added). Jones did not follow this directive. Rather, Jones filed a documented titled "Plaintiff's Motion Against Summary Judgement (sic)" within which she documents "Material Facts in Dispute." (Doc. 25 at 4–11). A review of this document, however, shows that Jones did not respond to Defendant's statement of facts one-by-one clearly distinguishing any fact she disputed, as instructed. Instead, Jones offered a narrative statement of her version of events.[3] (Doc. 25 at 4–11). Because Jones has not complied with the local rule or the directions of this Court, the Court will deem Defendant's statement of fact admitted.

---

[3] Defendant notes that it was not noticed of, and did not participate in, at least two of the depositions on which Jones relies. (Doc. 26 at 2 n.3).

## II.    Facts

Following a successful interview with Meg Mirivel (Caucasian), Dr. Chimfumnaya Smith[4] (African American), and former ADH employee Dr. Michelle Smith (race unknown), Jones began working on May 31, 2022, as a Public Information Manager for ADH. (Doc. 5 at 1–2; Doc. 20-1 at 2–3; Doc. 20-2 at 1; Doc. 20-3 at 2). Mirivel made the hiring decision and supervised Jones throughout her employment. (Doc. 20-1 at 3, 18; Doc. 20-2 at 1). As is ADH's policy, Jones was hired subject to a six-month probationary period during which she could be issued a counseling statement or terminated for any action. (Doc. 20-2 at 1, 3–4). Mirivel fired Jones on October 10, 2022 before the end of her probationary period. (Doc. 20-1 at 22).

In her complaint, Jones alleged that she was verbally abused by Mirivel and Dr. Smith as well as by a third employee, the Deputy Director of Communication, Katie White (race unknown). (Doc. 20-1 at 4). Jones's examples of Mirivel's abuse included Mirivel's direction to Jones that she was not free to initiate projects or to consult other team members without prior authorization and an allegation that Mirivel routinely rebuffed Jones's recommendations. (*Id*.). Jones said Dr. Smith acted abusively by describing Jones's behavior toward subgrantees as "aggressive" and by rejecting Jones's project ideas. (*Id*. at 5). Finally, Jones says that Katie White verbally abused and harassed her by complaining about the volume of Jones's speaking voice, complaining that Jones would interrupt others in meetings, "speaking pejoratively about [her] work in the community," suggesting that Jones arrived late to work, and reporting Jones for "minor infractions" such as complaints about the aerosol scents Jones used in her office. (*Id*. at 5–7). When pressed, Jones admitted that she did sometimes speak over others in meetings. (*Id*.).

---

[4] Throughout the pleadings the parties reference Dr. Smith as Dr. ChyChy, perhaps to distinguish her from Dr. Michelle Smith, who also participated in the hiring interview. However, because Dr. Michelle Smith is no longer with ADH and did not participate further in Jones's employment at ADH, the Court's references throughout this Order are in reference to Dr. Chimfumnaya Smith.

Mirivel maintains that Jones's coworkers and subgrantees reported difficulties in working with Jones. (Doc. 20-4 at 2–3). Maddie Stephens reported to Mirivel that Jones once made her uncomfortable when Jones questioned Stephens about both her faith as well as that of her boyfriend. (Doc. 20-4 at 4). In addition to the already mentioned conflicts between Katie White and Jones, White also reported to Mirivel that she had attempted to help Jones familiarize herself with the office and that Jones responded negatively to the offer. (*Id*. at 5). Mirivel personally observed Jones "corner and raise her voice" to yet another employee, Sarah Morris. (*Id*. at 6).

In response to these reports, Dr. Smith and Mirivel issued Jones a counseling statement on July 25, 2022 and met with her to discuss her "disregarding instructions and feedback, interacting with staff in an inappropriate and disrespectful manner, arriving late to work, and leave abuse." (Doc. 20-1 at 10, 25). According to ADH policy, counseling statements are used to document employee counseling when a supervisor determines that documentation and correction is necessary but that <u>no</u> disciplinary action will be taken, and for probation employees (like Jones) as required by ADH's performance evaluation policy. (Doc. 20-1 at 11–12). Jones's counseling statement provided that she had been observed (1) "actively disregarding feedback, information, or protocol which impacts work product and stakeholder relationships"; having (2) "disrespectful and inappropriate conversations with colleagues;" and participating in (3) "disruptive behavior that impacts work product and work environment." (Doc. 20-1 at 26). Examples of each allegation were provided and discussed in the meeting. (*Id*.).

Jones felt Mirivel wrongly believed her coworker's complaints to her detriment and argues that the counseling statement is evidence of the harassment she endured. (*Id*.). After the counseling session, however, Jones continued to not follow directives and to "have issues with taking feedback, incorporating feedback, [and] working with others and within her role at ADH." (Doc.

20-4 at 2). For example, on August 23, 2022, Mirivel edited Jones's work, but Jones returned the document to Mirivel having ignored the suggested edits. (Doc. 20-1 at 20). Then in September, Mirivel asked Jones by email to draft talking points by a specific deadline. (Doc. 20-1 at 19–20). Jones acknowledged receipt of the assignment; however, when the deadline was missed, Jones blamed others for her failure. (*Id.*).

While Jones described the office environment as "light and playful," she considered such an environment to be unprofessional and did not enjoy it. (Doc. 20-1 at 17). Jones responded to the counseling statement in writing explaining that her personality as "very no nonsense and often times [her] drive for productivity is miscommunicated as harsh." (Doc. 20-1 at 21, 27). In the same statement, Jones said that she would make more of an effort to be "congenial." (*Id.*).

Jones also argued that white employees were given more liberties than she. (Doc. 20-1 at 8). As examples, Jones states that white employees were allowed to work from home, keep their office doors closed, and come in late without backlash—all things Jones was told she could not do. (*Id.*  8–9). Jones identified white employees Sarah Morris and Maddie Stephens, who she believes were regularly tardy as well as two other employees—Patrick Fleming and Terrell Green—who were allowed to work from home, all without workplace consequences. (*Id.*). Jones did not know why they were allowed to work from home or how long these employees worked for ADH but none were probationary employees. (Doc. 20-1 at 9, 15–16; Doc. 20-2 at 2). Too, as the Deputy Director for Health Promotion, Fleming was employed in a grade higher than Jones, and Green worked in an entirely different department than Jones. (Doc. 20-1 at 15; Doc. 20-4 at 8). Jones also points to Linda Agnew-Morgan (African American) who was allowed to move offices; however, Agnew-Morgan also was not a probationary employee. (Doc. 20-1 at 14). When Jones was told that she would no longer supervise James Cain, Jones believed she had been demoted.

6

Dr. Smith stated that the change was not a demotion. (Doc. 20-3 at 8). Jones admitted that throughout her employment her salary, job title, work schedule, and work location never changed. (Doc. 20-1 at 21–22).

Jones told Dr. Smith that she felt the work environment was hostile, but Dr. Smith could not recall when that comment was made. (Doc. 20-3 at 3). That said, Dr. Smith confirmed that she was unaware of any complaints or reports that Jones filed with regard to racial harassment or discrimination before Jones was fired. (*Id*. at 7). In fact, both Dr. Smith and Mirivel confirmed that they were unaware of any incidents where Jones was treated differently because of her race and never heard any offensive jokes or witnesses discriminatory behaviors directed toward her. (Doc. 20-3 at 6; Doc. 20-4 at 10). Dissatisfied with the lack of response to her complaints, in August 2022, Jones met with ADH CFO Jo Thompson, an African American female, to discuss her work. (Doc. 5 at 15; Doc. 25 at 28). It does not appear that Thompson was deposed, and the discussion is referred only in Jones' amended complaint. The undisputed facts presented, however, state that neither Mirivel nor Dr. Smith were aware of Jones's conversation with Thompson or anyone else at ADH regarding a hostile work environment caused by racial animus. (Doc. 20-3 at 7, 9; Doc. 20-4 at 9). Before firing Jones, Mirivel discussed Jones's work and her reasons for terminating Jones with Thompson but Mirivel says that Thompson did not mention Jones's harassment concerns to Mirivel. (Doc. 20-4 at 9). Dr. Smith reported not liking the work Jones did for ADH and did not find Jones to be an asset to ADH. (Doc. 20-3 at 4–5). With Dr. Smith and Jo Thompson present, Mirivel terminated Jones on October 10, 2022 before her probationary period concluded. (Doc. 20-1 at 22).

### III.    Analysis

To succeed on a claim of race discrimination, Jones must sufficiently allege that: "(1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered an adverse employment action; and (4) similarly situated employees that were not members of the protected class were treated differently." *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005). Similarly, a hostile work environment is established when (1) an employee belongs in a protected group; (2) the employee was subject to unwelcome harassment; (3) the existence of a causal nexus between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take proper action. *Palesch v. Missouri Commn. on Human Rights*, 233 F.3d 560, 566 (8th Cir. 2000). Title VII protects employees who have reported workplace harassment and discrimination from retaliation. *Warren v. Kemp*, 79 F.4th 967, 973 (8th Cir. 2023), *cert. denied*, 144 S. Ct. 1010 (2024). Finally, "[t]o establish retaliation under either Title VII . . ., a plaintiff must prove (1) [s]he engaged in statutorily protected activity, (2) suffered an adverse employment action, and (3) that the engagement in a protected activity is the but-for cause of the adverse employment action." *Id*.

Jones unarguably is a member of a protected class and, ultimately, suffered an adverse employment action when she was terminated. She, however, has offered no direct evidence of a hostile work environment or discrimination caused by race. As a result, her claims will be considered under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If Jones establishes her *prima facie* case, then the burden shifts to Defendant to show a legitimate, nondiscriminatory reason for its actions. If Defendant satisfies its burden, the burden shifts back to Jones to show Defendant's proffered reason was pretextual. *McDonnell*

*Douglas*, 411 U.S. at 804. Under this standard, the Court finds that Jones has not shown a *prima facie* case of discrimination or harassment. Further, there is no evidence that her termination was retaliatory.

Jones's allegations fail on their face as she has not shown that similarly situated white employees were treated differently, that she was meeting ADH's expectations, or that any of the behavior she deemed harassment was the result of her race. First, Jones has not identified a single similarly situated probationary employee. *E.g.*, *Bogren v. Minnesota*, 236 F.3d 399, 405 (8th Cir. 2000)(holding probationary state troopers are not similarly situated to non-probationary troopers) (citing *Ghane v. West*, 148 F.3d 979, 982 (8th Cir.1998) (rejecting comparisons to similarly-situated, nonprotected employees because the comparable employees were not probationary employees and because their conduct did not rise to the same level as the plaintiff's)). At most, Jones pointed to a number of employees of various races and job titles who were not similarly situated and who she perceived to have been receiving more favorable treatment. Summary judgment could be granted on this failure alone.

Second, Jones has not shown that she was meeting ADH's expectations. Jones received feedback on her work product and workplace behavior, and she questions both its relevancy and the motivation behind it. She has not, however, shown that the feedback was motivated by a racial animus or that similarly situated white employees did not receive the same sort of advice and questioning. *See Anderson v. Durham D&M, LLC*, 606 F.3d 513, 519 (8th Cir. 2010). In fact, nothing in the pleadings or the various email exchanges she attaches to her response to summary judgment support her allegations that she was subjected to unlawful <u>racial</u> discrimination, harassment, or retaliation. In fact, none of the litany of events Jones characterized as abuse and harassment concerned race. At most, Jones has described interoffice personality conflicts and

tensions, that while perhaps annoying—arguing about the use of room sprays and speaking volume—are insufficient to demonstrate a hostile work environment. *Tandeme v. St. Cloud State University*, 328 F.3d 982, 991 (8th Cir. 2003).

For the same reasons, Jones has not shown that she was fired in retaliation for complaints about the workplace environment because she has not causally connected the behaviors she deemed harassment or her complaints about those behaviors with a racial animus. Even if Jones had met a *prima facie* retaliation, she has not shown that ADH's reason for firing her was pretextual. After the counseling statement, ADH documented that Jones continued to ignored her supervisor's directives and blamed others when questioned about missed deadlines. ADH's decision to fire Jones, given the above, overcomes any suggestion of pretext. *Scroggins v. University of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000).

**IV.   Conclusion**

For the reasons stated above, Defendant's motion for summary judgment (Doc. 20) is GRANTED. The case is dismissed with prejudice.

IT IS SO ORDERED this 21st day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE